# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>RHODIUM ENCORE LLC,<br><br>Debtors. | Case No. 4:26-cv-00235 |
| THE AD HOC GROUP OF SAFE PARTIES,<br><br>Appellant,<br>v.<br><br>LEHOTSKY KELLER COHN, LLP,<br><br>Appellee. | On appeal from the United States Bankruptcy Court for the Southern District of Texas |

## PRINCIPAL BRIEF OF
## APPELLANT THE AD HOC GROUP OF SAFE PARTIES

Mitchell P. Hurley
Of Counsel (*pro hac vice* pending)
AKIN GUMP STRAUSS HAUER
  & FELD LLP
One Bryant Park
New York, NY 10036
Telephone:  (212) 872-1000
Email:  mhurley@akingump.com

Z.W. Julius Chen
  Of Counsel (*pro hac vice* pending)
Kristen E. Loveland
  Of Counsel (*pro hac vice* pending)
AKIN GUMP STRAUSS HAUER
  & FELD LLP
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 887-4000
Email:  chenj@akingump.com
Email:  kloveland@akingump.com

Sarah Link Schultz
  Attorney in Charge (State Bar No. 24033047; S.D. Tex. 30555)
Elizabeth D. Scott
  Of Counsel (State Bar No. 24059699; S.D. Tex. 2255287)
AKIN GUMP STRAUSS HAUER
  & FELD LLP
2300 North Field Street, Suite 1800
Dallas, TX 75201
Telephone:  (214) 969-2800
Email:  sschultz@akingump.com
Email:  edscott@akingump.com

*Counsel to The Ad Hoc Group of SAFE Parties*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 8012 of the Federal Rules of Bankruptcy Procedure, The Ad Hoc Group of SAFE Parties (the "Ad Hoc Group") hereby states:  The Ad Hoc Group is a group of parties-in-interest with claims against the Debtors.  As such, the Ad Hoc Group has no parent corporation or stock.

All the Debtors except for the Wind Down Debtor Rhodium Enterprises, Inc. (the "Wind Down Debtor") were dissolved or merged into the Wind Down Debtor on the Effective Date of the Second Amended Joint Chapter 11 Plan of Liquidation for Rhodium Encore LLC and Its Affiliated Debtors.  The Wind Down Debtor has no parent corporation, and no publicly held corporation owns 10% or more of Rhodium Enterprises, Inc.'s equity interests.

i

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ................................................................ 1

STATEMENT OF THE ISSUE.................................................................... 1

INTRODUCTION ................................................................................... 2

STATEMENT OF THE CASE ................................................................... 4

    A.    Statutory Background.................................................... 4

    B.    Factual Background...................................................... 5

        *1.*    *Rhodium files for bankruptcy and seeks to retain LKC as special litigation counsel.* .................................. 5

        *2.*    *After virtually all LKC work was completed, LKC and Rhodium seek approval of a reverse-engineered contingent fee that fits the precise terms of Rhodium's bespoke settlement with Whinstone.* .............. 7

        *3.*    *The Bankruptcy Court approves LKC's reverse-engineered contingent fee.* .............................................. 11

SUMMARY OF THE ARGUMENT .............................................................. 13

STANDARD OF REVIEW ........................................................................ 14

ARGUMENT ......................................................................................... 15

THE BANKRUPTCY COURT'S MODIFICATION OF THE TERMS UNDER WHICH LKC WAS RETAINED CONTRAVENES SECTION 328(a) .................................................................................... 15

    A.    The Bankruptcy Court's Approval Of The Modified Contingent Fee Cannot Rest On The Supposed Approval Of The Original Contingent Fee .............................................. 17

        *1.*    *The Bankruptcy Court could not have authorized the original contingent fee as "reasonable" when its terms were concealed.*...................................................... 17

        *2.*    *The Bankruptcy Court's justifications for approving a contingent fee arrangement do not satisfy section 328(a).* ...................................................................... 21

    B.    The Bankruptcy Court Erred In Permitting LKC To Tailor Its Compensation Arrangement To Foreseeable Developments.......................................................................... 24

ii

1.    *A bankruptcy court cannot modify a section 328(a) fee arrangement absent developments "incapable of being anticipated."* ......................................................... 25

2.    *The Bankruptcy Court's justifications for approving the modified fee arrangement do not satisfy section 328(a)'s requirements.* ..................................................... 29

CONCLUSION ........................................................................................... 32

iii

# TABLE OF AUTHORITIES

<u>CASES</u>:

*Duke v. Walker & Patterson, P.C.*,
   608 B.R. 499 (S.D. Tex. 2019) ..................................................................................1

*In re ASARCO, L.L.C.*,
   702 F.3d 250 (5th Cir. 2012) ...........................................................................*passim*

*In re Assadi*,
   No. 24-50268, 2025 WL 1576801 (5th Cir. June 4, 2025) ................................28

*In re Barron*,
   225 F.3d 583 (5th Cir. 2000) ..................................................................................26
   325 F.3d 690 (5th Cir. 2003) .............................................................................25, 26

*In re Computer Learning Ctrs., Inc.*,
   272 B.R. 897 (Bankr. E.D. Va. 2001)......................................................................19

*In re Consolidated Bancshares, Inc.*,
   785 F.2d 1249 (5th Cir. 1986) ....................................................................17, 22, 30

*In re Delta Servs. Indus.*,
   782 F.2d 1267 (5th Cir. 1986) ..................................................................................1

*In re Energy Partners, Ltd.*,
   409 B.R. 211 (Bankr. S.D. Tex. 2009) ...............................................................17, 20

*In re Evangeline Refin. Co.*,
   890 F.2d 1312 (5th Cir. 1989) ..............................................................................18, 22

*In re Frontier Commc'ns Corp.*,
   623 B.R. 358 (Bankr. S.D.N.Y. 2020)......................................................................17

*In re High Voltage Eng'g Corp.*,
   311 B.R. 320 (Bankr. D. Mass. 2004) .....................................................................19

*In re Insilco Techs., Inc.*,
   291 B.R. 628 (Bankr. D. Del. 2003).........................................................................18

*In re MMA L. Firm, PLLC*,
   661 B.R. 548 (Bankr. S.D. Tex. 2024) ........................................................17, 18, 19

*In re Nucentrix Broadband Networks, Inc.*,
　314 B.R. 574 (Bankr. N.D. Tex. 2004) ........................................................16, 26

*State v. Biden*,
　10 F.4th 538 (5th Cir. 2021) .................................................................................22

*United Artists Theatre Co. v. Walton*,
　315 F.3d 217 (3d Cir. 2003) .................................................................................14

*United States v. Valdez*,
　548 F. App'x 995 (5th Cir. 2013) .........................................................................14

S<small>TATUTES</small>:

11 U.S.C.
　§ 327(e) .....................................................................................................................4
　§ 328(a) ...........................................................................................................*passim*
　§ 330(a) ...........................................................................................................4, 5, 15
　§ 365(a) .....................................................................................................................6

28 U.S.C.
　§ 157(a) .....................................................................................................................1
　§ 157(b) .....................................................................................................................1
　§ 158(a)(1) .................................................................................................................1
　§ 158(c)(2) .................................................................................................................1
　§ 1334(a) ....................................................................................................................1

**Other Authorities**

3 C<small>OLLIER ON</small> B<small>ANKRUPTCY</small> § 328.01 (Alan N. Resnick & Henry J.
　Sommer eds., 16th ed. 2009) ...............................................................................26

F<small>ED</small>. R. B<small>ANKR</small>. P.
　2014(a) ...............................................................................................................17, 21
　8002(a)(1) ..................................................................................................................1

## JURISDICTIONAL STATEMENT

The bankruptcy court had jurisdiction over the jointly administered chapter 11 bankruptcy case of the Debtors.  *See* 28 U.S.C. §§ 157(a)-(b), 1334(a).  This Court has jurisdiction to hear this appeal from the bankruptcy court's Final Order Allowing Compensation and Reimbursement of Expenses to Lehotsky Keller Cohn LLP (the "Final Order"), A741; *see* 28 U.S.C. § 158(a)(1), as well as the underlying Order Granting Debtors' Application for an Updated Order Authorizing the Retention and Employment of Lehotsky Keller Cohn LLP as Special Litigation Counsel (the "Modified Retention Order"), which authorized the retention of Lehotsky Keller Cohn LLP and purported to set forth the terms of the fee award in the Final Order, A479; *see In re Delta Servs. Indus.*, 782 F.2d 1267, 1272 (5th Cir. 1986) (holding that bankruptcy court's retention orders are interlocutory); *Duke v. Walker & Patterson, P.C.*, 608 B.R. 499, 504 (S.D. Tex. 2019) ("A bankruptcy court's order granting a final fee application is an appealable order.").  The Final Order was issued on December 24, 2025, and Appellant timely filed a notice of appeal on January 7, 2026.  A741; Dkt. No. 1; *see* 28 U.S.C. § 158(c)(2); FED. R. BANKR. P. 8002(a)(1).

## STATEMENT OF THE ISSUE

Whether the bankruptcy court erred in approving a Modified Retention Order that resulted in a nearly $9 million contingent fee to Lehotsky Keller Cohn LLP,

when 11 U.S.C. § 328(a) requires an *ex ante* assessment of the fee's reasonableness and precludes any modification of its terms in light of foreseeable circumstances.

**INTRODUCTION**

The bankruptcy court's award of a contingent fee of nearly $9 million to Lehotsky Keller Cohn LLP ("LKC"), based on a Modified Retention Order that amended the terms of engagement as LKC was finishing its work, contravenes settled bankruptcy law. Under section 328(a) of the Bankruptcy Code, a bankruptcy court may authorize debtors to retain and compensate attorneys who are paid out of the bankruptcy estates, to the extent the proposed terms are identified at the outset of the engagement and are reasonable. To secure the certainty of payment provided by a section 328(a) retention, applicants must disclose the specifics of the fee arrangement in their application, so the proposed terms can be evaluated by the bankruptcy court and all creditors and other parties-in-interest. Once approved, the terms of engagement may be altered only if subsequent developments were incapable of being anticipated at the time the engagement was authorized.

In this case, Rhodium Encore LLC and its affiliates (collectively, "Rhodium" or the "Debtors") sought to retain LKC as special litigation counsel in their bankruptcy proceedings. In an original application for LKC's retention, filed pursuant to section 328(a), Rhodium disclosed the details of hourly rates for LKC's services and noted, without any detail, a contingent fee. The bankruptcy court

2

approved the application without mentioning the contingent fee at all. The debtor then proceeded to pursue the claims that were the subject of the LKC retention and later agreed to a settlement. At that point, when the terms of the settlement became clear, Rhodium filed a new application that, for the first time, sought the bankruptcy court's approval of specified terms for a contingent fee that closely tracked the structure of the settlement. Those new terms ultimately would take nearly $9 million from the Debtors' estate and award it to LKC. The bankruptcy court awarded the fee to LKC as a modification of the contingent fee it had purportedly approved as part of the original application.

In approving that modified contingent fee, the bankruptcy court erred twice. As a threshold matter, the bankruptcy court was wrong to find that the fee was appropriate in light of its approval of the original application. That approval did not contain section 328(a)'s requisite reasonableness determination with respect to any contingent fee. Nor could it have, for Rhodium failed to disclose any details of the fee, such as its size and triggers. In addition, by the bankruptcy court's own admission, the litigation settlement that the modifications were intended to capture was "foreseeable," not incapable of anticipation. And to the extent the bankruptcy court believed that the modifications were mere clarifications instead of substantive changes, that distinction is not relevant under section 328(a)'s exacting standard. Moreover, any such belief would be clearly erroneous: The changes effectively

3

allowed LKC to swap at most a $600,000 flat fee, the terms of which were not disclosed until after their purported approval, for a percentage-based fee of nearly $9 million for achieving the same result.

This Court should not permit the debtors and LKC to award LKC a windfall by tailoring the terms of a modified contingent fee with the benefit of hindsight, to the detriment of creditors' recoveries.  That is precisely the result that section 328(a) eschews.

## STATEMENT OF THE CASE

### A.    Statutory Background

Under the Bankruptcy Code, a trustee or debtor may employ an attorney, financial advisor, or other professional "for a specified special purpose."  11 U.S.C. § 327(e).  Such professionals "have the option of being compensated under either [section] 328(a) or [section] 330(a)" of the Bankruptcy Code.  *In re ASARCO, L.L.C.*, 702 F.3d 250, 260 (5th Cir. 2012).

Section 328(a)—the section at issue here—"applies when the bankruptcy court approves a particular rate or means of payment [at the *outset* of the engagement]."  *In re ASARCO*, 702 F.3d at 260 (alteration in original) (emphasis added); *see* 11 U.S.C. § 328(a) (permitting retention on "reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis").  By contrast, section 330(a)

4

applies at the *end* of the engagement and gives the bankruptcy court "broad discretion" to determine the amount professionals should be paid. *In re ASARCO*, 702 F.3d at 260; *see* 11 U.S.C. § 330(a) (providing for "reasonable compensation for actual, necessary services rendered" and "reimbursement for actual, necessary expenses"). As the Fifth Circuit has explained, section 328(a) provides the "tradeoff" of "certainty and predictability . . . at the expense of [section 330(a)'s] flexibility," given that "professionals would be underpaid [under section 328(a)] if their engagements should require more work than they had initially expected." *In re ASARCO*, 702 F.3d at 261.

By its terms, section 328(a) imposes two limitations, both of which are central to this appeal. First, the "terms and conditions of employment" must be "reasonable." 11 U.S.C. § 328(a). Second, a bankruptcy court may modify a professional's approved compensation only if the original "terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." *Id.*

### B.    Factual Background

> *1.    Rhodium files for bankruptcy and seeks to retain LKC as special litigation counsel.*

In August 2024, Rhodium, a cryptocurrency miner, filed voluntary petitions in the U.S. Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") under chapter 11 of the United States Bankruptcy Code. Rhodium's

principal operations were conducted at a site owned by Whinstone U.S., Inc. ("Whinstone") in Rockdale, Texas, where Rhodium had invested approximately $150 million to build out its infrastructure. A013. Although Rhodium and Whinstone worked cooperatively for over two years, things changed in May 2021 when one of Rhodium's largest competitors strategically acquired Whinstone. A016. Soon after, Whinstone attempted to terminate its contracts with Rhodium and shut off power to the Rockdale site, which resulted in significant costs to Rhodium and extensive litigation that was not resolved by the time Rhodium filed for chapter 11. A019.

On the first day of the bankruptcy, Rhodium sought the Bankruptcy Court's approval to assume certain of Rhodium's contracts with Whinstone. A022; *see* 11 U.S.C. § 365(a) (a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor"). In addition, Rhodium sought the Bankruptcy Court's permission to retain LKC—the law firm that had represented Rhodium from the start of its disputes with Whinstone—as its special litigation counsel. A479.

In its original application for an order authorizing LKC's retention as special litigation counsel (the "Original Application"), which was submitted pursuant to section 328(a), Rhodium explained that LKC would be paid "primarily on a hourly basis . . . with an update to the Firm's 2024 standard rates." A480; *see* A048, ¶ 26.

The Original Application also "mentioned that LKC would be 'discount[ing] its rates in exchange for a contingent fee.'"  A480 (alterations in original) (quoting A053, ¶ 44).  The Original Application did not, however, disclose any details about the putative contingent fee or describe any of the circumstances under which it would be triggered.

In an October 14, 2024 order granting the Original Application (the "Original Retention Order") under section 328(a), the Bankruptcy Court authorized LKC's retention "in accordance with [LKC]'s normal hourly rates and disbursement policies, as contemplated by the [Original] Application."  A082-A083.  The Order made no mention of a contingent fee and was entered before the Ad Hoc Group of SAFE Parties (the "Ad Hoc Group") was formed.  *See* A085.

> 2.    *After virtually all LKC work was completed, LKC and Rhodium seek approval of a reverse-engineered contingent fee that fits the precise terms of Rhodium's bespoke settlement with Whinstone.*

LKC, along with two other law firms, represented Rhodium in connection with a four-day evidentiary hearing in November 2024 concerning Rhodium's motion to assume.  A225.  On December 16, 2024, the Bankruptcy Court ruled that Rhodium could assume the Whinstone contracts, *id.*, largely ending the primary litigation work for which LKC had been retained by the bankruptcy estates.

During a February 19, 2025 in-person mediation at which LKC was present, the main economic terms of a proposed settlement between Rhodium and Whinstone

7

were announced, which were later embodied in several related agreements between the parties.  *See* A115.  The agreements provided that Whinstone would acquire all or substantially all of Rhodium's tangible assets "located at Rockdale" and contracts for consideration worth $185 million.  *See* A115, A190.  Rhodium's lead bankruptcy counsel credited the February 19, 2025 mediation with getting the parties "most of the way" to the $185 million transaction.  Tr. of Mar. 19, 2025 Hr'g at 6, *Whinstone US, Inc. v. Imperium Inv. Holdings LLC*, No. 24-03240 (ARP) (Bankr. S.D. Tex. Mar. 31, 2025); *see also* A172.

Just two weeks after the February 19, 2025 mediation, LKC and Rhodium signed a new engagement letter (the "March 2025 Letter") that modified and purported to "supersede[]" the terms of the still-undisclosed original contingent fee arrangement.  A103.  On March 6, 2025, Rhodium filed an application seeking the Bankruptcy Court's approval of the modified arrangement (the "Modified Application").  For the first time, Rhodium and LKC disclosed the terms of the original contingent fee, which were outlined in an engagement letter from nearly two years earlier (the "May 2023 Letter") that was now attached to the Modified Application.

The May 2023 Letter established "three components" for LKC's original contingent fee: (a) "$600,000 if" Rhodium was "acquired by Whinstone or an affiliate"; (b) "5% of any recovered energy credits up to $5 million, and 1% of any

8

additional recovered energy credits"; and (c) "10% of any additional amounts not attributable to energy credits that [Rhodium] recover[ed], including, but not limited to, compensatory damages, incidental or consequential damages, punitive or exemplary damages, civil fines, costs, and attorneys' fees." A100.

The March 2025 Letter established materially different terms for LKC's modified contingent fee. Most significantly, the March 2025 Letter added a new paragraph (d) that created an additional trigger for a percentage-based success fee, beyond those in paragraphs (b) and (c). While the May 2023 Letter triggered such fees only if Rhodium recovered "energy credits" or "damages" from the Whinstone litigation, the March 2025 Letter triggered such fees if, in addition, "[Rhodium] (or all or substantially all of the Rockdale assets) [was] acquired by Whinstone or an affiliate"—the scenario already covered by paragraph (a)'s flat fee of $600,000. A104.

The Ad Hoc Group objected, arguing that Rhodium and LKC could not modify the engagement terms sought by the Original Retention Application and embodied in the Original Retention Order. The Ad Hoc Group noted that LKC had failed to disclose the terms of any putative contingent fee arrangement in its Original Retention Application, and that therefore the Original Retention Order did not, and could not have, authorized a contingent fee. The Ad Hoc Group emphasized that "[a] contingent fee arrangement cannot be approved without the terms and triggers

9

for the fee being disclosed in advance in connection with the professional's fee application, including so the Court and stakeholders can consider whether those terms and triggers are reasonable." A175. Certainly, the Ad Hoc Group argued, Rhodium and LKC could not now reverse-engineer LKC's fee to fit the Whinstone settlement, after LKC had completed virtually all of its substantive work for the Debtors and learned of the terms of the Whinstone settlement in connection with the February 19, 2025 mediation. A170.

The Bankruptcy Court held a hearing on the Modified Application on June 4, 2025. Rhodium's general counsel, Charles Topping, testified that Rhodium had not disclosed the details of the original contingent fee because they were "not something that you would normally give to a litigation adversary," like Whinstone. A393. In addition, Topping provided his view that the fee had been "adequately disclosed" because its existence had been "mentioned" in the Original Application. A394-A395.

Topping also testified that he did not believe there were substantive differences between the original and modified arrangements. He principally explained that the modified arrangement "provide[d] clarity and transparency as to the method" of compensation in the case of "a settlement that both resolved the litigation and sold other Rhodium assets[.]" A398-A399. Yet in contemporaneous emails sent to LKC soon after the terms of the settlement became clear—emails that

10

were not produced and did not surface until after the Court issued the Modified Retention Order[1]—Topping advised that his "reading of the present engagement letter is that in the event of an acquisition by Whinstone . . . the success fee *would be limited to [the] $600k*."   A731 (emphasis added); *see also* SA010, SA018. Topping assured LKC that he was "attempting to solve for that problem."  A731.

> 3.  *The Bankruptcy Court approves LKC's reverse-engineered contingent fee.*

The Bankruptcy Court denied the Ad Hoc Group's objection and approved the requested modifications to the terms of LKC's retention.  *See* A479.

The Bankruptcy Court first rejected the Ad Hoc Group's argument "that when Rule 2014 of the Federal Rules of Bankruptcy states than an application must include 'any proposed arrangement for compensation,' . . . the application must include more detail on the contingent fee than was included in the Debtors' initial application."

---

[1] In March 2025, prior to the filing of the Ad Hoc Group's objection to the Modified Application, the Ad Hoc Group served Rhodium with discovery to which Topping's emails would have been responsive.  Rhodium failed to produce them. Rhodium later produced the emails in October 2025 in response to a discovery request from LKC, and (at the Ad Hoc Group's insistence) submitted the emails to the Bankruptcy Court in connection with an Emergency Motion for Authority to Pay Fees to Lehotsky Keller & Cohn LLP.  *See* A725.  Rhodium acknowledged that its general counsel's emails "could be read as inconsistent with [his] testimony at the hearing on the objection to the revised engagement letter."  A732.  It nonetheless attempted to explain away the content of those emails based on the "context" that Topping was "negotiating a potential success fee."  A733.  Topping's quick provision of a modified fee arrangement and reassurance that Rhodium was "attempting to solve for th[e] problem" of the $600,000 fee belies that explanation. *See* A731.

11

A492.  Notably, the Bankruptcy Court did not suggest that it had ever assessed whether the terms of the original contingent fee (or even the terms of the modified contingent fee) were reasonable under section 328(a).  Instead, it concluded that, "[g]iven the contributions by LKC to the Whinstone matter, it would be unreasonable for th[e] Court to hold that LKC cannot receive a contingent fee, especially when one considers that the initial application mentioned a contingency fee numerous times."  A497.

In a similar vein, the Bankruptcy Court credited LKC's explanation that it had "relied on the Debtors and Debtors' bankruptcy counsel regarding the amount of information to be included about the contingent fee," because the Debtors had purportedly been concerned about revealing the details of the contingent fee to Whinstone, their litigation adversary.  A493-A494.  The Bankruptcy Court acknowledged that the Debtors and LKC could have pursued "avenues . . . that would allow for the protection of potentially privileged information while at the same time ensuring that the parties have fulsome notice."  A494.  Yet the Bankruptcy Court concluded that "it would disrupt any notion of fairness to punish LKC for following the direction and advice of the Debtors' general counsel and Debtors' experienced bankruptcy counsel."  A494.

The Bankruptcy Court also did not analyze whether altering the terms of the award was justified by "developments not capable of being anticipated."  11 U.S.C.

12

§ 328(a). On the contrary, the Bankruptcy Court deemed the ultimate outcome to be "foreseeable." A497. The Bankruptcy Court thus approved the modification as reflecting "the original intention of the agreement between the Debtors and LKC at the time of initial application." A496.

## SUMMARY OF THE ARGUMENT

This Court should reverse the Final Order's award of a contingent fee to LKC under the terms of the Modified Retention Order.

**A.** According to the Bankruptcy Court, the approval of the contingent fee proposed in the Modified Application was appropriate because the Original Application had mentioned a contingent fee numerous times. Mere mentions of a fee are not enough. Section 328(a) of the Bankruptcy Code requires an assessment of reasonableness, which is possible only if the "specific facts" of the arrangement required by Federal Rule of Bankruptcy Procedure 2014 are disclosed to the Bankruptcy Court and creditors. Because the Original Application did not disclose those facts, no original contingent fee could have been approved and no modification can be based on such approval. It makes no difference under section 328(a) that Rhodium and LKC withheld those details to avoid sharing them with a litigation adversary (*i.e.*, Whinstone), particularly when the Bankruptcy Court itself recognized that disclosure could have been possible under a protective order. Nor is

13

it relevant to the statutory standard that LKC relied on the misguided advice of Rhodium's experienced bankruptcy counsel.

**B.** The Bankruptcy Court also erred in approving the modifications to the contingent fee. Fifth Circuit precedent is crystal clear that an after-the-fact modification of a section 328(a) fee arrangement is reversible error unless subsequent developments were incapable of being anticipated at the time the engagement was approved. Here, the Bankruptcy Court concluded the opposite; it held that the subsequent developments warranting the modifications *were* "foreseeable." Furthermore, the suggestion that the proposed modification amounted to a clarification, as opposed to a substantive change, is both legally irrelevant and refuted by LKC's receipt of a $9 million percentage-based-fee windfall instead of the $600,000 flat fee it originally agreed to receive.

## STANDARD OF REVIEW

Courts "analyze the legal conclusions that guided [an] awarding court's determinations [of attorneys' fees] de novo and that court's findings of fact for clear error." *In re ASARCO*, 702 F.3d at 257. They "also review mixed questions of law and fact de novo." *Id.* A bankruptcy court's approval of a retention agreement under section 328(a) must be consistent with the "tenets . . . for determining reasonableness." *United Artists Theatre Co. v. Walton*, 315 F.3d 217, 228-234 (3d Cir. 2003); *see also United States v. Valdez*, 548 F. App'x 995, 1003 (5th Cir. 2013)

14

("Compliance with [a] statute is reviewed de novo."). "In the context of a [section] 328(a) award, . . . the question whether subsequent developments were 'not capable of being anticipated' is, at the very least, a mixed question of law and fact, if not a pure question of law, subject in either case to de novo review." *In re ASARCO*, 702 F.3d at 263.

## ARGUMENT

## THE BANKRUPTCY COURT'S MODIFICATION OF THE TERMS UNDER WHICH LKC WAS RETAINED CONTRAVENES SECTION 328(a)

Professionals who seek compensation pursuant to 11 U.S.C. § 328(a) "must accept [a] tradeoff." *In re ASARCO*, 702 F.3d at 261. "[B]y obtaining prior approval of their fee arrangements under [section] 328(a)," such professionals "avoid subjecting their fees to the inherent uncertainty" that comes with the "broad discretion" bankruptcy courts exercise under section 330(a) after professional services have been rendered. *Id.* at 260-261. But to gain the "certainty and predictability" that section 328(a) affords, the proponent of the retention bears the burden to demonstrate, and a bankruptcy court must in turn ensure, that the proposed terms of engagement are "reasonable." 11 U.S.C. § 328(a). When terms have been approved under section 328(a), moreover, "the court may not stray from them . . . unless developments subsequent to the original approval that were

15

*incapable* of being anticipated render the terms improvident." *In re ASARCO*, 702 F.3d at 257 (emphasis added).

The Fifth Circuit has not hesitated to find "reversible error when a bankruptcy court has deviated from" those requirements, as the Bankruptcy Court did here. *In re Nucentrix Broadband Networks, Inc.*, 314 B.R. 574, 580 (Bankr. N.D. Tex. 2004). In the Modified Retention Order, the Bankruptcy Court approved Rhodium and LKC's modified contingent fee arrangement on the grounds that (i) it had appropriately approved the parties' original contingent fee and (ii) the modified arrangement did not include "significant substantive changes." A492-A497. The Bankruptcy Court, however, could not have concluded (and did not conclude) that the previously undisclosed terms of the original contingent fee were "reasonable," and so it could not have based its approval of the modified contingent fee on any approval of an original fee. It also did not analyze whether the requested modifications to that purported arrangement—which were plainly significant and indisputably foreseeable—met section 328(a)'s demanding standard for after-the-fact adjustment. This Court should reverse the award of a contingent fee to LKC.

**A.**     **The Bankruptcy Court's Approval Of The Modified Contingent Fee Cannot Rest On The Supposed Approval Of The Original Contingent Fee**

> *1.*     *The Bankruptcy Court could not have authorized the original contingent fee as "reasonable" when its terms were concealed.*

***a.***     A bankruptcy court that fails to evaluate whether a professional's compensation is "reasonable" under section 328(a) abdicates its "broad supervisory powers over professional persons who render services for the estate."   *In re Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1254 (5th Cir. 1986).   "[I]n light of the limited review that can be rendered after the fact" to terms approved under section 328(a), "strong attention must be given to whether or not the terms are truly reasonable" at the outset.   *In re MMA L. Firm, PLLC*, 661 B.R. 548, 555 (Bankr. S.D. Tex. 2024).   The burden of showing reasonableness falls on the party "seeking the employment of professionals under [section] 328(a)," and must be made based on "*evidence, not conclusory statements*."   *In re Energy Partners, Ltd.*, 409 B.R. 211, 226 (Bankr. S.D. Tex. 2009) (some emphasis omitted); *see also In re Frontier Commc'ns Corp.*, 623 B.R. 358, 363 (Bankr. S.D.N.Y. 2020) ("[T]he burden of proof to establish that the proposed compensation terms are reasonable rests with the applicant.").   Indeed, the Federal Rules of Bankruptcy Procedure are explicit that an application for professional employment "must state *specific facts* showing . . . any proposed arrangement for compensation."   FED. R. BANKR. P. 2014(a)(2)(E) (emphasis added).

17

In the absence of such disclosure, bankruptcy courts have no ability to determine "whether the retention, as proposed, is in the best interests of the estate." *In re MMA L. Firm*, 661 B.R. at 555; *see In re Insilco Techs., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003) (section 328(a)'s "inquiry about what is 'reasonable' must be tailored to Bankruptcy Code requirements, including . . . the interests of the various constituents"). Doing so is essential because "every dollar received by the applicant results in one dollar less for creditors." *In re Evangeline Refin. Co.*, 890 F.2d 1312, 1326 (5th Cir. 1989); *see* A053, ¶ 43 (acknowledging LKC's fees "are to be paid out of Debtors' estates"). That means a fee arrangement is not a "simple" agreement "between . . . two parties." A753, Tr. of Hr'g at 109:5-7, *In re Loral Space & Commc'ns Ltd.*, No. 03-41710 (RDD) (Bankr. S.D.N.Y. June 7, 2006), Dkt. No. 2769 (hereinafter "*Loral* Tr."). Rather, "the entire creditor body and other parties in interest are, in essence, parties to the agreement" and must be apprised of its particulars. A753 at 109:11-14; *see* A752 at 108:16-19 (requiring "that a section 328(a) retention [request] . . . must go out on an extremely wide notice to essentially all known parties in interest before it is finally approved"); *see also In re MMA L. Firm*, 661 B.R. at 555 (acknowledging that bankruptcy courts must take into account "whether there is creditor opposition to the retention and retainer provisions").

18

Equally important, without knowing the details of a proposed fee arrangement a bankruptcy court cannot assess "whether, given the size, circumstances and posture of the case, the amount of the retainer is itself reasonable." *In re MMA L. Firm*, 661 B.R. at 555. That is especially imperative where, as here, a contingent fee is proposed because such fees are "not appropriate in every case." *In re Computer Learning Ctrs., Inc.*, 272 B.R. 897, 906 (Bankr. E.D. Va. 2001). Their reasonableness depends on a comparison with the "potential legal fees under a traditional hourly fee agreement, the likelihood of prevailing, and the magnitude of the recovery," *id.*, as well as "the prevailing [contingent] fees in the industry for comparable engagements," *In re High Voltage Eng'g Corp.*, 311 B.R. 320, 335 (Bankr. D. Mass. 2004).

Courts have not hesitated to reject contingent fees where applicants have failed to satisfy those criteria. *See, e.g.*, *In re Computer Learning Ctrs.*, 272 B.R. at 906 (rejecting "contingent fee proposal" where "record [wa]s devoid of any information that would permit an informed evaluation [of the fee]"); *In re High Voltage Eng'g*, 311 B.R. at 335 (denying section 328(a) application for contingent fee where court was given no information about comparable fees "in bankruptcy cases or other insolvency or workout situations").

*b.* In this case, the Bankruptcy Court could not have authorized a contingent fee through its Original Retention Order. The Bankruptcy Court could not have

made the requisite determination that the original fee was "reasonable"—and that the modified fee was likewise reasonable based on its purported connection to the original—because neither Rhodium nor LKC provided any details about that original fee. *See In re Energy Partners*, 409 B.R. at 226-227 (denying retention application in part because "wholly insufficient record" made it impossible to determine whether "terms of an engagement agreement reflect normal business terms in the marketplace"). The Original Application stated only that LKC had agreed to "a contingent fee depending on the outcome of litigation." A052-A053, ¶ 41.

That lack of elaboration stands in stark contrast to the Original Application's justification for the hourly rates that LKC intended to charge. The Original Application explained that LKC's "standard rates for 2024 are . . . $1400 per hour for name partners, $1300 per hour for other partners, $1000 per hour for counsel, $850 per hour for associates, and $500 per hour for a staff attorney," and that such hourly rates were "consistent with rates that Lehotsky Keller Cohn LLP has charged in other comparable complex cases with no variation based upon the geographical location of a case." A052-A053, ¶¶ 41, 44. Rhodium's general counsel also "confirmed that the rates [LKC] will charge Debtors in the post-petition period will be the same as the rates [LKC] charged Debtors in the period immediately preceding the Petition Date" and were "consistent with those of comparably skilled

20

professionals in this market that Debtors have employed." A074, ¶¶ 10, 11.  No such assurances were provided with respect to the contingent fee.

The Bankruptcy Court therefore had none of the details that would have allowed it to compare LKC's original contingent fee to fees under a traditional hourly arrangement or to prevailing fees in the industry for comparable engagements.   By the same token, because creditors likewise received no information about the original fee's terms, the Bankruptcy Court had no way of knowing their views.  Without those "specific facts," the Bankruptcy Court could not, and did not, assess whether the contingent fee was "reasonable" in the context of this case.  FED. R. BANKR. P. 2014(a).  And given that the Modified Retention Order is predicated on the fiction that the original contingent fee was properly approved, the modified contingent fee cannot be "reasonable" either.

> 2.   *The Bankruptcy Court's justifications for approving a contingent fee arrangement do not satisfy section 328(a).*

The Bankruptcy Court defended its purported approval of the original contingent fee arrangement on three principal grounds.   None satisfies section 328(a)'s reasonableness requirement.

*First*, the Bankruptcy Court made much of the fact that the Original Application "mentioned" the contingent fee.  A492.  But citing mere mentions of a fee's *existence* is no substitute for the *evaluation* of "specific facts," in the absence of which a reasonableness determination cannot be made.  FED. R. BANKR. P.

21

2014(a); *cf. State v. Biden*, 10 F.4th 538, 556 (5th Cir. 2021) ("Stating that a factor was considered . . . is not a substitute for considering it.") (ellipsis in original). Otherwise, a bankruptcy court could conclude at the outset that a merely mentioned contingent fee was "reasonable," only for the applicant to later reveal a 90% award that stripped the estate of value. That is not the "strict standard[]" section 328(a) imposes "in light of the unique nature of the bankruptcy process," *In re Consolidated Bancshares*, 785 F.2d at 1256 n.6, and the reality that "every dollar received by the applicant results in one dollar less for creditors," *In re Evangeline Ref.*, 890 F.2d at 1326.

In fact, it is difficult to see how the Original Retention Order could be deemed to have approved a contingent fee at all. The Bankruptcy Court had no contingent fee terms before it to approve. *Contra* A496. And the language in the Original Retention Order that the Bankruptcy Court later cited did not include the phrase "contingent fee," or any synonym. That language stated only that LKC would be employed "in accordance with [LKC]'s normal hourly rates and disbursement policies, as contemplated by the Application." A496 (quoting A082-A083). The phrase "as contemplated by the Application" is limited by the preceding clause, which discusses "hourly rates and disbursement policies"—not a contingent fee. Regardless, even if the Original Retention Order could be read to encompass a

22

contingent fee because it was mentioned in the Original Application, that would not cure the Bankruptcy Court's failure to determine its reasonableness.

*Second*, the Bankruptcy Court credited the Debtors and LKC's concern about disclosing the contingent fee's terms to their litigation adversary, Whinstone. *See* A493. Yet nothing in section 328(a) permits applicants to keep the Bankruptcy Court, creditors, and other stakeholders in the dark out of necessity. For good reason: There is no policy justification for allowing secretive arrangements, and every reason to guard against abusive practices under section 328(a). Even assuming such an exception were available, it could hardly be invoked here. The Bankruptcy Court itself recognized that the Debtors and LKC could have requested "a protective order" and pursued "other avenues . . . that would allow for the protection of potentially privileged information while at the same time ensuring that the parties have fulsome notice." A494.

*Third*, whether it would be "fair[]" to punish LKC for relying on the advice of Rhodium's bankruptcy counsel not to include any details of the contingent fee in its Original Application is likewise irrelevant under section 328(a). *See* A494 ("LKC relied on the Debtors and Debtors' bankruptcy counsel regarding the amount of information to be included about the contingent fee and it would disrupt any notion of fairness to punish LKC for following the direction and advice of the Debtors' general counsel and Debtors' experienced bankruptcy counsel."). In

23

section 328(a), Congress established express textual requirements, not a free-ranging equitable inquiry. *See* pp. 4-5, *supra*. But even as a matter of equity, there was no unfairness. The requirements of section 328(a) and Federal Rule of Bankruptcy Procedure 2014 are plain on their face and, as officers of the court, LKC attorneys were required to understand and comply with the relevant rules. The same is true of the "Debtors' experienced bankruptcy counsel." A494.

### B. The Bankruptcy Court Erred In Permitting LKC To Tailor Its Compensation Arrangement To Foreseeable Developments

Even if LKC's original contingent fee had been properly disclosed and found reasonable, the Bankruptcy Court committed an independent legal error when it approved LKC's request to modify an already approved fee based on developments that the Bankruptcy Court concluded *were* "capable of being anticipated at the time" the original fee was approved. 11 U.S.C. § 328(a) (permitting modification only based on "developments *not* capable of being anticipated at the time" of the original application) (emphasis added). The Fifth Circuit "ha[s] upheld a bankruptcy court's revision of a fee arrangement pursuant to [section] 328(a)'s improvidence exception on only *one* occasion." *In re ASARCO*, 702 F.3d at 258-259 (emphasis added). This case has no chance of being the second. The new fee arrangement assigned a significantly higher, percentage-based success fee to a circumstance that was already anticipated by the original arrangement's much more modest flat-fee award. Simply

24

put, section 328(a) does not permit professionals to retroactively optimize their fees based on outcomes they foresaw from the start.

> *1.    A bankruptcy court cannot modify a section 328(a) fee arrangement absent developments "incapable of being anticipated."*

**a.**  A court may modify a compensation agreement it previously authorized under section 328(a) only if the original arrangement "prove[s] to have been *improvident in light of developments not capable of being anticipated* at the time of the fixing of such terms and conditions."  *In re ASARCO*, 702 F.3d at 257 (quoting 11 U.S.C. § 328(a)).  That standard "creates a 'high hurdle' for a movant seeking to revise the terms governing a professional's compensation *ex post facto*."  *Id.* at 258. "Such a movant must show not merely that a compensation adjustment is appropriate in light of subsequent developments that were previously unforeseen or unanticipated by the parties; instead, the movant is tasked with the weightier burden of proving that the subsequent developments were *incapable* of being anticipated at the time the engagement was approved."  *Id.* (emphasis added); *see In re Barron*, 325 F.3d 690, 693 (5th Cir. 2003) ("*Barron II*") ("[T]he intervening circumstances must have been incapable of anticipation, not merely unanticipated.") (emphasis

25

omitted); *In re Barron*, 225 F.3d 583, 586 (5th Cir. 2000) ("*Barron I*") ("It is not enough that the developments were simply unforeseen.").

Accordingly, "before a [bankruptcy] court may revise a compensation agreement, it must explain with specificity why the subsequent developments were 'incapable of being foreseen.'" *In re ASARCO*, 702 F.3d at 258 (quoting *Barron II*, 325 F.3d at 693). "A failure by the bankruptcy court to make a record establishing that the approval was improvident and setting out with specificity (not conclusory statements) the development that could not have been anticipated at the time of approval will be insufficient to comply with the requirements of section 328." *Id.* (emphasis omitted) (quoting 3 COLLIER ON BANKRUPTCY § 328.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2009)). Given that high bar, it is no surprise that modifications to section 328(a) fee arrangements are routinely reversed, even where professionals will be "underpaid" as a result. *Id.* at 261; *see In re Nucentrix Broadband Networks, Inc.*, 314 B.R. at 580 ("In *In re Barron*, the Fifth Circuit twice reversed a very respected bankruptcy judge for altering a Section 328-approved payment scheme based upon only 'developments unfor[e]seen when originally approved.'").

The Fifth Circuit's decision in *In re ASARCO*, is instructive. In that case, the bankruptcy court initially approved a section 328(a) fee arrangement for ASARCO's financial advisor, Barclays, when ASARCO's "restructuring process was expected

to take the form of a quick sale." 702 F.3d at 261-262. "After being retained, however, Barclays became aware of numerous internal problems, which hindered ASARCO's ability to effectuate a quick sale." *Id.* at 262. Because "Barclays did not know—and was incapable of discovering—how dysfunctional ASARCO truly was at the time that it agreed to the terms of the Engagement Letter," the bankruptcy court reasoned that section 328's improvidence exception was satisfied and modified Barclays' fee to include a $975,000 fee enhancement. *Id.* at 264.

The Fifth Circuit reversed. It explained that Barclays "could have and should have anticipated, within the meaning of [section] 328(a), that a company in need of a Chapter 11 reorganization might have latent problems lurking under its hood" and "should have accounted for it in the fee arrangement that was approved under [section] 328(a)." *In re ASARCO*, 702 F.3d at 264-265. Even though Barclays had performed "additional services" and "fill[ed] the gaps created by those who had left" ASARCO, the bankruptcy court unlawfully deviated from section 328(a)'s pre-approved fee arrangement. *Id.* at 264. "Barclays [had] enjoyed the benefits of this bargain by, for example, obtaining pre-approval of a $[5] million transaction fee," and so "it must [also] bear [section] 328(a)'s burdens." *Id.* at 265.

*b.* Far from assessing whether LKC's modified contingent fee was justified by "developments not capable of being anticipated," the Bankruptcy Court explained that the modification "reflected the facts of the dispute between the Debtor and

27

Whinstone at that time, as well as *foreseeable outcomes*." A496-A497 (emphasis added). That finding—the opposite of what justifies a section 328(a) modification—alone requires reversal of the contingent fee award.

The Bankruptcy Court's concession is no surprise. After all, as later disclosed, paragraph (a) of the *original* contingent fee established a $600,000 award to LKC if Rhodium was "acquired by Whinstone or an affiliate." A482. The proposed modification adds paragraph (d), which creates a percentage-based recovery for the same event—*i.e.*, if "[Rhodium] (or all or substantially all of the Rockdale assets) [was] acquired by Whinstone or an affiliate." A484. Accordingly, this case does not present any occasion to entertain Rhodium and LKC's complaint that applicants should not be expected "to identify every then-hypothetical scenario that could theoretically arise." A236.

In any event, as *In re ASARCO* and other authorities make clear, section 328(a)'s improvidence standard puts applicants to the task of anticipating the unexpected. *See* 702 F.3d at 264. Rhodium and LKC's proposed rule, which would allow the tailoring of fee arrangements with the benefit of hindsight, is completely at odds with the "extraordinarily rigid" nature of "[e]x ante approval." *In re Assadi*, No. 24-50268, 2025 WL 1576801, at *2 (5th Cir. June 4, 2025).

28

2.     *The Bankruptcy Court's justifications for approving the modified fee arrangement do not satisfy section 328(a)'s requirements.*

In approving the proposed contingent fee modification, the Bankruptcy Court asked whether there were any "significant substantive changes to the contingency fee from the time of the [Original Application] to the [Modified Application]," and concluded that "the updates to the contingency fee in the [March 2025 Letter] reflect[ed] the original *intentions* of LKC and the Debtors" as reflected in the May 2023 Letter.  A496-A497 (emphasis added).  That reasoning fails on both the facts and the law.

As an initial matter, neither the May 2023 Letter nor any of its terms were disclosed in the Original Retention Application.  As such, they could not have been approved by the Bankruptcy Court in connection with that Application.  In actuality, the appropriate comparison under section 328(a) would be between the terms of the discounted hourly rates approved in the Original Retention Order, which identified none of the terms of a contingent fee, and the March 2025 Letter's contingent fee.

Even if the Original Retention Order somehow had authorized the (undisclosed) terms of the May 2023 Letter's contingent fee, the Bankruptcy Court's subsequent modification still would not be justified.  Section 328(a) contains no exception for small changes.  Nor does it contemplate that a change is justifiable simply because it aligns with the parties' purported expectations.  *See* A753, *Loral* Tr. 109:7-16 (rejecting interpretation consistent with apparent interpretation of "the

29

two parties to the [fee] agreement," because "[t]he problem is that essentially the entire creditor body and other parties in interest are, in essence, parties to the agreement, given the bankruptcy context . . . [a]nd consequently the agreement itself needs to speak for itself"). To hold otherwise would be to invite manipulation and gamesmanship, in circumvention of section 328(a)'s "strict standards." *In re Consolidated Bancshares*, 785 F.2d at 1256 n.6.

At any rate, the difference in compensation terms between the May 2023 Letter and the March 2025 Letter is huge. As explained, even taking the undisclosed terms of the May 2023 Letter's contingent fee as the starting point, the March 2025 Letter allowed Rhodium and LKC to calculate a larger, percentage-based fee in the event "Whinstone or an affiliate" acquired "all or substantially all of [Rhodium's] Rockdale assets." A484; *see also* A187 (redline showing addition of paragraph (d) with new trigger). The added percentage-based success fee was worth nearly *$9 million* beyond the original $600,000 flat fee for that scenario, a significant sum by any measure. *See* A501-A502. Common sense dictates that Rhodium and LKC would not have gone to the trouble of revising their fee agreement were it otherwise.

Despite his contrary testimony before the Bankruptcy Court, not even Rhodium's general counsel, Topping, believed that the Modified Application presented mere "clarifying changes" as opposed to "substantive differences." A494-A496. As plainly set forth in emails that surfaced after the Bankruptcy Court

30

approved the modification but before the Final Order, Topping reacted to the Ad Hoc Group's concern over the contingent fee arrangement in February 2025 by telling LKC: "My reading of the present engagement letter is that in the event of an acquisition by Whinstone . . . the success fee would be limited to [the] $600k." A731; *see also* SA010, SA018. The creation of a percentage-based contingent fee triggered by Whinstone's acquisition of Rhodium or its Rockdale assets was Topping's "attempt[] to solve for that problem." A731.

31

## CONCLUSION

This Court should reverse the award of a contingent fee to LKC.


Dated:  March 24, 2026                     Respectfully submitted,

                                           **AKIN GUMP STRAUSS HAUER
                                             & FELD LLP**

                                           */s/ Sarah Link Schultz*
                                           Sarah Link Schultz
                                             Attorney in Charge (State Bar No.
                                             24033047; S.D. Tex. 30555)
                                           Elizabeth D. Scott
                                             Of Counsel (State Bar No. 24059699;
                                             S.D. Tex. 2255287)
                                           2300 North Field Street, Suite 1800
                                           Dallas, TX 75201
                                           Telephone:  (214) 969-2800
                                           Email:  sschultz@akingump.com
                                           Email:  edscott@akingump.com

                                           Mitchell P. Hurley
                                             Of Counsel (*pro hac vice* pending)
                                           One Bryant Park
                                           New York, NY 10036
                                           Telephone:  (212) 872-1000
                                           Email:  mhurley@akingump.com

                                           Z.W. Julius Chen
                                             Of Counsel (*pro hac vice* pending)
                                           Kristen E. Loveland
                                             Of Counsel (*pro hac vice* pending)
                                           2001 K Street, NW
                                           Washington, DC 20006
                                           Telephone: (202) 887-4000
                                           Email:  chenj@akingump.com
                                           Email:  kloveland@akingump.com

                                           *Counsel to The Ad Hoc Group of SAFE
                                           Parties*

32

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2026, a copy of the foregoing document was filed electronically and served pursuant to this Court's ECF Filing System, upon counsel of record.

/s/ Sarah Link Schultz
Sarah Link Schultz
   Attorney in Charge (State Bar No.
   24033047; S.D. Tex. 30555)
AKIN GUMP STRAUSS HAUER & FELD LLP
2300 North Field Street, Suite 1800
Dallas, TX 75201
Telephone:  (214) 969-2800
Email:  sschultz@akingump.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Bankruptcy Procedure 8015(h), the undersigned certifies that this brief complies with the applicable type-volume limitation of Federal Rule of Bankruptcy Procedure 8015(a)(7)(B) because, excluding the parts of the brief exempted by Federal Rule of Bankruptcy Procedure 8015(g), this brief contains 7,063 words.  This brief also complies with the typeface requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5) and type-style requirements of Federal Rule of Bankruptcy Procedure 8015(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

*/s/ Sarah Link Schultz*
Sarah Link Schultz
   Attorney in Charge (State Bar No.
   24033047; S.D. Tex. 30555)